IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ARTHUR HOUSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-12-474-D |
| | ) | |
| INDEPENDENT SCHOOL DISTRICT NO. 89 | ) | |
| OF OKLAHOMA COUNTY, OKLAHOMA a/k/a | ) | |
| OKLAHOMA CITY PUBLIC SCHOOLS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

This matter comes before the Court on Defendants' Motion to Dismiss [Doc. No. 13], filed

pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants Independent School District No. 89 of Oklahoma

County, Oklahoma, a/k/a Oklahoma City Public Schools (the "District") and DeAnn Davis

("Davis") seek a partial dismissal of the Amended Complaint, as discussed further below.  Plaintiff

has timely opposed the Motion, which is at issue.[1]

**Factual Background**

Plaintiff Arthur Houston is a current employee of the District who served as an elementary

school principal from 2003 until 2011, when he was forced to accept a teaching position.  He claims

that Davis, who became Executive Director of Elementary Schools in August, 2010, and thus

Plaintiff's supervisor, engaged in racial discrimination and retaliation by imposing unwarranted

discipline and removing him from his position as principal.  Davis allegedly retaliated against

Plaintiff for complaints of discrimination made by him and his wife, a former employee of the

District.  Plaintiff also claims that Davis and others subsequently denied his numerous applications

---

[1] Defendants filed a timely reply brief, and with permission, Plaintiff also filed a surreply brief.

for administrative positions within the District.  Plaintiff seeks relief from both the District and

Davis under 42 U.S.C. § 1981 (Count I), and from the District under Title VII of the Civil Rights

Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*. (Counts II and III).  He also asserts claims

against both defendants under 42 U.S.C. § 1983 for alleged violations of his Fourteenth Amendment

right of equal protection (Count IV) and his First Amendment right of free speech (Count VII).

Plaintiff asserts two pendent state law claims, one against the District for alleged negligent

supervision and retention of Davis (Count V) and one against Davis for alleged interference with

his contractual relationship with the District (Count VI).

### Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

*see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether

a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *See id*. at 679.  The question

to be decided is "whether the complaint sufficiently alleges facts supporting all the elements

necessary to establish an entitlement to relief under the legal theory proposed."  *Lane v. Simon*, 495

F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

### Plaintiff's Claims

The Amended Complaint states that Plaintiff is an African American employee of the

District who was removed from his position as principal of Willow Brook Elementary School after

receiving written discipline from Davis and being placed on plans of improvement during the 2010-2011 school year.  Plaintiff alleges he was replaced for the 2011-2012 school year by a Caucasian female employee who had previously served as a teacher under his supervision.  Plaintiff claims Davis treated him differently from similarly situated Caucasian principals, and that her performance-based reasons for recommending his reassignment to a teaching position were pretextual.  Davis allegedly was motivated by racial discrimination and retaliation for Plaintiff's complaints of racial discrimination, as well his wife's federal lawsuit against the District that concluded in June, 2010.  The Amended Complaint states Plaintiff filed his first EEOC charge regarding his reassignment in September, 2011.

Plaintiff also alleges he unsuccessfully sought reassignment to numerous administrative positions that became vacant during the 2011-2012 school year, including assistant principal positions at Roosevelt Middle School and Taft Middle School and central office positions of Director of Professional Growth and Development, Homeless Coordinator, and Student Services Coordinator.  Plaintiff states he continued to apply for other vacant positions without success, most recently being denied the position of Human Resources Elementary Team Leader in July, 2012.  Plaintiff claims these vacancies were filled by less qualified candidates who are not African American.  Plaintiff presumably claims the District's personnel decisions were motivated by racial discrimination.  The Amended Complaint states that Plaintiff filed an EEOC charge in February, 2012, after he was not selected for vacant administrative positions, and amended the charge in August, 2012, after being informed of the July, 2012, decision.

As relevant to the Motion, the claim asserted against the District in Count V of the Amended Complaint is one of "negligent retention and supervision."  *See* Am. Compl. [Doc. No. 9], ¶ 52.  The District allegedly breached a duty "to properly supervise its employees to refrain from engaging

in unlawful acts, including but not limited to discrimination and retaliation." *Id*. ¶ 53.   The

Amended Complaint does not make clear which employees, other than Davis, were involved.  *See*

*id*. ¶ 55 (stating the District "knew or should have known its employees, including but not limited

to Defendant Davis, would create an undue risk of harm to others.").  However, Plaintiff presents

argument in his brief regarding only the District's supervision and retention of Davis.  *See* Pl.'s

Resp. Br. [Doc. No. 16] at 7-8.  The Court accepts this clarification of Plaintiff's claim.

Count IV of the Amended Complaint seeks damages under § 1983 from the District and

Davis individually based on a claim that unspecified actions violated "his constitutional right to

equal protection" under the Fourteenth Amendment.  *See* Am. Compl. [Doc. No. 9], ¶ 48.  Plaintiff

presumably claims that adverse employment actions against him were based on his minority race.

Similarly, Plaintiff seeks damages from Defendants under § 1983 in Count VII based on a claim that

unspecified actions violated "his constitutional right to the freedom of speech" under the First

Amendment.  *Id*., ¶ 62.  Plaintiff presumably claims that adverse employment actions against him

were taken in retaliation for constitutionally protected speech.

Concerning the speech at issue, Count VII states in full as follows:  "Plaintiff's comments

as stated herein constitute protected comments on matters of public concern as Plaintiff complained

about the race discrimination he and other African American Administrators experienced as well

as the negative impact that removing African American administrators had on African American

families within [the District]."  *Id*. ¶ 63.  The only comments of this nature described in the

Amended Complaint are set forth in paragraph 19 as follows:

> On or about May 3, 2011, Plaintiff submitted a written letter to
> Superintendent Karl Springer, who is Caucasian.  Plaintiff's letter outlined his
> concerns regarding race discrimination, including but not limited to the favorable
> assignment changes for Caucasian administrators (i.e., principals), lack of racial
> diversity among [District] administrators, and his belief that male African American

administrators were being targeted by being placed on Plans for Improvement and subsequently terminated.  Plaintiff further stated that the issues addressed in his letter adversely impacted school communities where the majority of African American families reside, and that [the District]'s actions were not in the best interest of all children.

After May 3, 2011, Plaintiff allegedly received formal notice from Davis that he would not be recommended for a position of elementary school principal or assistant principal for the following school year, and that he could either accept a teaching position or be recommended for termination.

## Discussion

### A.    Statutory Exemptions from Tort Liability

The District first seeks dismissal of the negligent supervision and retention claim based on sovereign immunity under the Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151-172.  By its Motion, the District invokes an exemption from liability for performing or failing to perform "any act or service which is in the discretion of the [school district] or its employees."[2]  *See* Okla. Stat. tit. 51, § 155(5).  The District asserts that personnel decisions are discretionary matters implicating policy concerns related to its educational mission, and a negligence claim regarding such decisions is barred by the discretionary function exemption.  In a reply brief (responding to argument by Plaintiff), the District also asserts immunity under an exemption from liability for the "enforcement of or failure to . . . enforce a law," which is statutorily defined to include a "written policy."  *See id*. § 155(4).  The District argues that to the extent Plaintiff's negligence claim is based on an alleged failure of the District to enforce its written policies regarding discrimination and retaliation, as argued in his brief, the claim is barred by the § 155(4) exemption.

---

[2]  The Act waives sovereign immunity for the state and its political subdivisions (including school districts) "only to the extent and in the manner provided in this act."  *See* Okla. Stat. tit. 51, § 152.1(B).  It authorizes liability for torts committed by a political subdivision or "its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act."  *Id*. § 153(A).  The Act then provides specific, enumerated exemptions from liability.  *See id*. § 155.

1.      **Discretionary Function, § 155(5)**

The District's argument that employment decisions are protected under the discretionary function exemption rests on a case previously decided by this Court, *Benedix v. Independent School District No. 7*, Case No. CIV-08-1060-D, 2009 WL 975145 (W.D. Okla. April 9, 2009), and cases from other jurisdictions holding that personnel decisions involve policy-making and planning concerns and warrant protection as discretionary matters.  Defendant also notes the Tenth Circuit has applied the discretionary function exemption of the Federal Tort Claims Act to hold that "[d]ecisions regarding employment and termination are inherently discretionary" and "are precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing."  *See Richman v. Straley*, 48 F.3d 1139, 1146-47 (10th Cir. 1995).

Plaintiff distinguishes *Benedix* as involving the employment of a school superintendent, and relies on the decision of another federal district judge holding that "discretionary function immunity does not apply" to a claim of negligence by a school district in hiring, retaining, and supervising a teacher (a high school band director who had a sexual relationship with a student).  *See J.M. v. Hilldale Independent School Dist. No. I-29*, No. CIV-07-367-JHP, 2008 WL 2944997, *13 (E.D. Okla. July 25, 2008) (unpublished).  Plaintiff argues that Davis, in her position as Executive Director of Elementary Schools, was not similarly situated to the superintendent in *Benedix*, who was appointed by the school board and served at its direction.  Instead, Plaintiff contends Davis was more like the classroom teacher in *J.M.*

The Court begins its analysis, as it did in *Benedix*, by observing that "[w]hen the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."  *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (internal quotation

omitted).  Of course, this Court is also bound by Tenth Circuit decisions interpreting state law.  *See*

*Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 867 (10th Cir. 2003).  Neither the parties' briefs nor

independent research discloses any controlling decision regarding the applicability of the

discretionary function exemption to a claim of negligent supervision and retention.  Thus, the Court

must attempt to predict how the Oklahoma Supreme Court would rule.

The Oklahoma Supreme Court cautioned against a broad application of § 155(5) in *Nguyen*

*v. State*, 788 P.2d 962 (Okla. 1990), which involved a decision to release a mental patient:

> [T]he discretionary function exemption from governmental tort liability is extremely
> limited . . . because a broad interpretation would completely eradicate the
> government's general waiver of immunity.  Almost all acts of government
> employees involve some element of choice and judgment and would thus result in
> immunity if the discretionary exemption is not narrowly construed.

*Id*. at 964.  The court held in *Nguyen*, that "the release of a mental patient is not a discretionary act"

but that governmental immunity depended on whether the facts and circumstances showed that the

patient's release was done "in conformance with then current recognized standards" and thus fell

within a different exemption.  *See id*. at 966.  In its analysis, the court endorsed the majority,

"planning-operational approach" to the discretionary function exemption.  "Under this approach

initial policy level or planning decisions are considered discretionary and hence immune, whereas

operational level decisions made in the performance of policy are considered ministerial and not

exempt from liability."  *Id*. at 964-65;  *see also Medina v. State*, 871 P.2d 1379, 1383 (Okla. 1993).

The Tenth Circuit has also utilized this approach in holding that the discretionary function

exception of the Federal Tort Claims Act barred a retaliatory discharge suit by former employees

because the termination decision "involve[d] an element of choice and [was] the kind of decision

that implicate[d] policy concerns relating to accomplishing the agency's mission."  *Sydnes v. United*

*States*, 523 F.3d 1179, 1187 (10th Cir. 2008). The court of appeals commented on *Richman* (on which the District relies) as follows:

> Whatever may've occurred in the specifics of plaintiffs' situation, employment and termination decisions are, as a class, the kind of matters requiring consideration of a wide range of policy factors . . . . Choosing how to evaluate these various policy considerations, determining which to give more weight to, and ultimately deciding whether a particular individual with a certain skill-set and temperament will help an agency fulfill its mission all involve sensitive policy judgments . . . . Forcing the government, at the jurisdictional stage, to defend its rationale for its employment decision in particular cases would, moreover, eviscerate the benefits of sovereign immunity that Congress has chosen to retain in discretionary function cases . . . .

*Id.* at 1186.

Similarly, in this case, the Court concludes that the Oklahoma Supreme Court would find the District's decisions regarding the supervision and retention of its Executive Director of Elementary Schools should be protected from scrutiny under the discretionary function exemption. Like a school superintendent, the District's supervision and retention of managerial employees, such as Davis, involve the kinds of decisions that implicate policy concerns relating to the District's institutional mission. Another judge of this Court recently reached a similar conclusion, reasoning that "decisions involving the training, supervision, and retention of an upper level school administrator necessarily involve a high level of interaction with policy and institutional management concerns, and are hence the sort of discretionary decisions to which the statutory exception appears to be directed." *Allen v. Justice Alma Wilson Seeworth Academy, Inc.*, No. CIV-12-0093-HE, 2012 WL 1298588, *2 (W.D. Okla. April 16, 2012) (unpublished).

Accepting this view, the Court finds that Plaintiff's claim against the District for negligence in supervising and retaining Davis is barred by the discretionary function exemption of § 155(5), absent any factual allegations by Plaintiff that would take the District's employment decisions regarding Davis outside of this general rule. Upon examination of the Amended Complaint, the

Court finds no factual allegations from which to conclude that the decisions and conduct underlying Plaintiff's negligence claim were operational in nature rather than planning matters. In his brief, Plaintiff argues that the District had written policies prohibiting discrimination and retaliation and the District's failure to enforce these policies with respect to Davis was operational negligence, and not a matter of discretion. In a footnote, Plaintiff requests leave to amend his pleading to "include facts relating to the District's adoption of its EEO policy," if necessary. *See* Pl.'s Resp. [Doc. No. 16] at 8 n.2. Solely for the purpose of considering whether these additional allegations should be permitted, the Court will address Plaintiff's argument that the District was allegedly negligent in the execution of its anti-discrimination policies. For reasons discussed below, the Court finds this argument fails to save Plaintiff's negligence claim, which would be immune under a different statutory exemption.

### 2.     Enforcement of Law or Policy, § 155(4)

Through argument in his brief, Plaintiff claims "the District had the discretion to implement an EEO policy" but once the policy decision was made, "the District was obligated to make certain that its employees met the standards imposed by said policy." *See* Pl.'s Resp. Br. [Doc. No. 16] at 9. With his brief, Plaintiff provides copies of the District's general nondiscrimination policy and its grievance procedures for discrimination complaints, including a section that prohibits retaliation for making a complaint.[3] An examination of these policies reveals they are expressly based on various state and federal laws prohibiting discrimination and retaliation. *See* Pl.'s Resp. Br., Ex. 6 [Doc.

---

[3] "Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion. Exceptions to this general rule include the following: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and 'matters of which a court may take judicial notice.'" *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (internal quotation omitted)). Here, the written policies on which Plaintiff relies would be central to his proposed amended complaint.

No. 16-6], Policy No. G-02 at 2.  As pertinent here, they state only general anti-discrimination principles.

Regarding Plaintiff's additional allegations, the District argues that a theory of liability based on its alleged failure to enforce anti-discrimination laws and policies would be barred by the enforcement of law exemption of § 155(4).  Plaintiff responds that § 155(4) "is narrowly applied to law enforcement officials."  *See* Pl.'s Surreply Br. [Doc. No. 20] at 1.  Plaintiff's position is incorrect.  While § 155(4) has been invoked in cases involving law enforcement decisions, it is not so limited.  *See Medina v. State*, 871 P.2d 1379, 1383 (Okla. 1993) (noting "[t]he exemptions in subsections 4 and 5 of § 155 apply to all governmental entities").[4]

Upon consideration, the Court finds that a negligence claim based on the District's alleged failure to enforce its written policies would be barred by the exemption for enforcement of laws, as provided by Section 155(4).  *See id.* ("subsection 4 of § 155 expressly exempts failures to enforce institutional policies"); *see also State ex rel. Oklahoma Dep't of Public Safety v. Gurich*, 238 P.3d 1, 4 (Okla. 2010) ("The State and its political subdivisions enjoy immunity for the choice to adopt or enforce a law, the formulation of law enforcement policy, and the method by which policy is implemented."); *Morales v. City of Oklahoma City*, 230 P.3d 869, 876 (Okla. 2010) (§ 155(4) protects discretionary decision whether to enforce a law).  In *Gurich*, for example, the Oklahoma Supreme Court rejected an argument that § 155(4) should apply to the actions of individual officers engaged in a police pursuit of a fleeing driver, which constituted an implementation of law

---

[4]  A separate exemption, § 155(6), expressly applies to  law enforcement and fire protection.  Under this exemption, the operative word is "protection" and immunity therefore attaches under § 155(6) only when police are providing a protective service.  *See Schmidt v. Grady County*, 943 P.2d 595, 598 (Okla. 1997); *see also Salazar v. City of Okla. City*, 976 P.2d 1056, 1066 (Okla. 1999); *Prichard v. City of Okla. City*, 975 P.2d 914, 917 (Okla. 1999).  The Oklahoma Supreme Court has made clear that negligence in carrying out a law enforcement function "– as in actions incident to arrest or imprisonment – must be distinguished from negligently providing protective service.  The former activity is unshielded by § 155(6) immunity."  *See Salazar*, 976 P.2d at 1066 (emphasis omitted); *accord Morales v. City of Okla. City*, 230 P.2d 869, 876 (Okla. 2010).

enforcement policy, but the court acknowledged that the government retains immunity for agency-level policy or planning decisions. *See Gurich*, 238 P.3d at 3-4.

In this case, as the Court understands Plaintiff's claim, he alleges the District negligently allowed Davis to violate its written policy against racial discrimination and retaliation in personnel decisions within her area of authority. In other words, the District allegedly failed to enforce its written anti-discrimination policy against an upper-level management employee who was imposing discipline and recommending positions for lower-level management employees. Despite Plaintiff's effort to recast his claim as operational negligence, the alleged error or omission occurred at the policy and planning level; it involved an alleged failure to enforce an institutional policy in administrative planning decisions. This claim implicates the enforcement of policy exemption, and is barred by § 155(4).

### 3.      Conclusion Regarding Plaintiff's Negligence Claim

For these reasons, the Court finds that Plaintiff has failed to state a tort claim in Count V of the Amended Complaint for which the District can be held liable. Thus, this part of Defendants' Motion should be granted, and Count V against the District should be dismissed. No opportunity for amendment is needed because Plaintiff's proposed amendment would be futile. *See Brereton v. Bountiful City Corp.* 434 F.3d 1213, 1219 (10th Cir. 2006).

### B.      Municipal Liability Under Section 1983

The District also seeks dismissal of Plaintiff's § 1983 claim against it in Count IV for denial of equal protection. The District contends the Amended Complaint contains insufficient factual allegations to establish a basis for municipal liability under § 1983, which does not authorize *respondeat superior* liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The District asserts that the Amended Complaint fails to identify any official policy or custom that

caused the alleged constitutional violation to occur and, therefore, lacks necessary facts to show any action of the District was the "moving force" behind Plaintiff's alleged discriminatory treatment. *See Monell*, 436 U.S. at 694; *see also Board of County Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). The District also contends Plaintiff has failed to allege that any action by an official with final policy-making authority deprived him of equal protection. The District asserts that Oklahoma law affords only a board of education, and not an individual superintendent or executive director like Davis, with authority to make decisions regarding employment contracts and positions. *See* Okla. Stat. tit. 70, § 5-117(14).

Plaintiff concedes that the Amended Complaint does not allege the school board was involved in the alleged discriminatory actions on which his equal protection claim is based. Plaintiff argues, however, that Davis merely recommended his removal as principal and placement in a different position, and the school board accepted her recommendations. Through argument in his brief, "Plaintiff seeks leave to amend his pleadings to include allegations and additional support reflecting the District School Board's official decision to remove Plaintiff as principal . . . ." *See* Pl.'s Resp. Br. [Doc. No. 16] at 10. Defendant makes no reply to this request.

Accordingly, the Court finds that Plaintiff's pleading fails to state a § 1983 equal protection claim against the District and its Motion to dismiss Count IV should be granted, but that Plaintiff should receive an opportunity for further amendment.

## C.    First Amendment Claim

Defendants seek dismissal of Plaintiff's § 1983 claim for an alleged First Amendment violation on the ground that "Plaintiff's speech did not address a matter of public concern but was merely an internal complaint made up the chain of command." *See* Defs.' Motion [Doc. No. 13]

at 2. Defendants challenge whether Plaintiff's factual allegations are sufficient to satisfy the first two elements of a First Amendment retaliation claim.

It is well established that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *see also Connick v. Myers*, 461 U.S. 138, 147 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968). A retaliation claim brought by a public employee based on constitutionally protected speech is governed by a five-prong *Garcetti/Pickering* test. *See Morris v. City of Colorado Springs*, 666 F.3d 654, 661 (10th Cir. 2012); *see also Couch v. Board of Trustees*, 587 F.3d 1223, 1235 (10th Cir. 2009). Here, the pertinent elements are: "(1) whether the speech was made pursuant to an employee's official duties; [and] (2) whether the speech was on a matter of public concern." *See Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009); *see also Morris*, 666 F.3d at 661; *Rohrbough v. University of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010). These elements present "issues of law to be decided by the court." *Morris*, 666 F.3d at 661; *Dixon*, 553 F.3d at 1302; *see also Rohrbough*, 596 F.3d at 745.

"The Tenth Circuit's decisions addressing the first step of the *Garcetti/Pickering* analysis 'have taken a broad view of the meaning of speech that is pursuant to an employee's official duties.'" *Rohrbough*, 596 F.3d at 746 (quoting *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008); *see also Casey v. West Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1331 (10th Cir. 2007) (describing the first prong of the analysis as a "heavy barrier"). However, the court of appeals has not announced bright line rules, but "has taken a case-by-case approach, looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Rohrbough*, 596 F.3d at 746. While "speech directed at an individual or entity within an employee's chain of command is often found to be

pursuant to that employee's official duties," this factor is not dispositive.  *See id*. at 747.  "[T]he proper focus is ultimately still whether the speech 'stemmed from and [was of] the type . . . that [the employee] was paid to do,' regardless of the exact role of the individual or entity to which the employee has chosen to speak."  *Id*. (quoting *Green v. Bd. of County Comm'rs*, 472 F.3d 794, 798 (10th Cir. 2007); alterations in *Rohrbough*).

Similarly, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *See Connick*, 461 U.S. at 147-148.  "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication."  *See City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004); *see also Deutsch v. Jordan*, 618 F.3d 1093, 1099-1100.  "In determining whether speech pertains to a matter of public concern, the court may consider 'the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest.'"  *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1205 (10th Cir. 2007) (quoting *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000)).

In this case, both parties rely on case law addressing the first and second prongs of the *Garcetti/Pickering* test in the context of summary judgment rulings, and both argue facts outside the Amended Complaint.[5]  Neither party addresses the sufficiency of Plaintiff's factual allegations to state a plausible claim under Rule 12(b)(6).  Plaintiff, however, provides a copy of his letter to

---

[5] Defendants, for example, rely on the proposition that "speech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties."  *See* Defs.' Motion [Doc. No. 13] at 10 (quoting *Rohrbough*, 596 F.3d at 747).  Although Plaintiff concedes in his brief that Superintendent Springer "happens to be within Plaintiff's chain of command," this fact is not alleged in the Amended Complaint.  *See* Pl.'s Resp. Br. [Doc. No. 16] at 13.  For his part, Plaintiff argues that his letter was not submitted pursuant to the District's grievance policy, and was directed to district-wide issues outside of his area of authority.  *See id*. at 16-17.

Superintendent Springer, which may properly be considered as a document central to his First Amendment claim. *See supra* note 3.

In considering Plaintiff's factual allegations under the "refined standard" of *Twombly/Iqbal*, the Court is guided by the holding of the court of appeals in *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012), that an employment discrimination plaintiff need not establish a *prima facie* case in the complaint but "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Id.* at 1192. Upon consideration of Plaintiff's "Letter of Concerns" and the factual allegations of the Amended Complaint, the Court finds that Plaintiff has stated a plausible First Amendment Claim. Specifically, with regard to the deficiencies asserted by Defendants, the Court notes the stated purpose of Plaintiff's letter to Superintendent Springer was to provide notice of "several areas of concerns which have adversely impacted school communities on the northeast/central Oklahoma sides of town, in which the majority of African American families reside." *See* Pl's Resp. Br., Ex. 8 [Doc. No. 16-8]. The letter reflects that copies would be sent to the board of education, the Oklahoma City Chapter of the National Alliance of Black School Educators, and the NAACP. Although several concerns appear related to Plaintiff's circumstances, the Court cannot say as a matter of law on the present record that Plaintiff was speaking pursuant to his official duties or speaking solely about private concerns. Therefore, Defendants' Motion must be denied with respect to the § 1983 claim asserted in Count VII.

## Conclusion

For these reasons, the District is entitled to dismissal under Rule 12(b)(6) of the claims asserted in Counts IV and V only; the dismissal of Count V (negligence) is with prejudice, but the dismissal of Count IV (equal protection) is with leave to amend.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [Doc. No. 13] is GRANTED in part and DENIED in part, as set forth herein.  Plaintiff may file a Second Amended Complaint within 14 days of this Order.

IT SO ORDERED this 30th day of May, 2013.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE