IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ARTHUR HOUSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-12-474-D |
| | ) | |
| INDEPENDENT SCHOOL DISTRICT | ) | |
| NO. 89 OF OKLAHOMA COUNTY, | ) | |
| OKLAHOMA, a/k/a OKLAHOMA CITY | ) | |
| PUBLIC SCHOOLS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# O R D E R

Before the Court are Defendant District's Motion for Summary Judgment [Doc. No. 50] and Defendant Davis' Motion for Summary Judgment [Doc. No. 51], filed pursuant to Fed. R. Civ. P. 56. Defendants Independent School District No. 89 of Oklahoma County, Oklahoma, a/k/a Oklahoma City Public Schools (the "District") and DeAnn Davis ("Davis") seek a judgment as a matter of law on all claims asserted in the Corrected Second Amended Complaint. Plaintiff has timely opposed the Motions, which are fully briefed. Because both defendants rely on the same summary judgment record and incorporate each other's briefs, and Plaintiff similarly relies on a single statement of facts, the Motions are taken up together.

## Factual Background

Plaintiff Arthur Houston, an African American, is a current employee of the District who served as an elementary school principal from August 2005 through May 2011, when he was forced to accept a teaching position. Plaintiff was demoted after Davis became

Executive Director of Elementary Schools and his supervisor for the 2010-2011 school year. Plaintiff also was not selected to fill any of the vacant administrative positions for which he subsequently applied, allegedly despite superior qualifications. Plaintiff claims Defendants' actions were motivated by racial discrimination and retaliation for complaints of racial discrimination made by him and his wife, a former employee. Under the Corrected Second Amended Complaint, Plaintiff seeks relief from the District under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII") for racial discrimination and retaliation, and under 42 U.S.C. § 1983 for violation of his First Amendment right of free speech; he seeks damages from Davis on his claims under § 1981 and § 1983 and a common law tort claim of interference with his employment contract.

## Standard of Decision

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### Statement of Undisputed Facts[1]

Plaintiff was hired by the District in August 2005 to be the principal of Willow Brook Elementary School ("Willow Brook"), which is located in northeast Oklahoma City and has a student body that is predominantly African American. Plaintiff holds a bachelor's degree in elementary education, a master's degree in education, and certification as an administrator.

---

[1] This statement includes material facts presented by Defendants that are properly supported and not opposed in the manner required by Rule 56, as well as additional facts presented by Plaintiff that are properly supported and not opposed. All facts are stated in the light most favorable to Plaintiff. It should be noted that Plaintiff did not respond to the Motions in the manner required by LCvR56.1(c) but, instead, began his brief with his own statement of facts. Then Plaintiff responded to Defendants' statement of facts by denying or only partially admitting most facts, but many "denials" simply add information or argument designed to show that the fact does not preclude recovery. Such attempts to dispute facts evidenced by the record are not helpful to the Court.

He has enjoyed a lengthy career in education that has included positions as a teacher, an assistant principal, and an elementary school principal in other public school districts.

As principal of Willow Brook, Plaintiff received annual performance evaluations by several different supervisors, two of whom were African American. For the first four years of his tenure, Plaintiff received an overall rating of "meets job expectations," although he sometimes received a lower or higher rating in a particular category. In June 2010, Plaintiff was evaluated by Dr. Rochelle Converse (Caucasian) for the 2009-10 school year and received a "does not meet job expectations" rating. Two areas of concern were low student test scores and the timely submission of reports. An African-American supervisor had earlier expressed similar concerns. Plaintiff was informed that a plan of improvement would be required for the 2010-11 school year.

In the interim, a reorganization plan proposed by then-Superintendent Karl Springer was approved by the board of education, and the position of Executive Director of Elementary Education was created. Davis (Caucasian) was selected and approved for the position. Two principals were promoted to become associate directors of elementary education, Charles Tompkins (Caucasian) and Patricia Watson-Hunt (African American). These three administrators divided responsibility for supervision of the District's elementary schools among themselves without regard to location, principal, or the school's performance, except the associate directors were not assigned to their former schools. Davis was assigned to Willow Brook and became Plaintiff's supervisor.

On November 5, 2010, Davis issued a written admonishment to Plaintiff regarding his performance, stating reasons why she found his instructional and operational leadership to be unsatisfactory and setting requirements to be met during the next 45 days. In addition to low student test scores, Davis criticized Plaintiff's employment of a social worker without an approved contract and Willow Brook's low score on an "organizational health" assessment tool utilized by the District. Davis informed Plaintiff that he would be expected to meet with the District's leadership consultant every week and he would continue to receive assistance from an instructional facilitator. On February 11, 2011, Davis met with Plaintiff and informed him that he had not satisfied her performance requirements. On February 17, 2011, Davis issued a second written admonishment to Plaintiff and stated that another performance review would occur after March 24, 2011. Plaintiff denies that he failed to meet Davis' requirements, and although Plaintiff admits he did not comply with the District's contracting policy, he presents evidence that other principals had committed the same infraction without being disciplined.

During the 2010-11 school year, Willow Brook was being assessed by a support team assigned by the Oklahoma State Department of Education to assist schools with plans of improvement regarding student test scores. On March 23, 2011, following a third site visit to Willow Brook, the team issued a positive report regarding the school's leadership and improvements that had been made "due, in large part, to the encouragement and leadership of the principal." *See* Pl.'s Ex. 59 [Doc. No. 68-40], p.8 (ECF numbering).

At meetings of the District's board of education in March and April of 2011, the board approved re-employment of school principals for the 2011-12 school year. Plaintiff's name was not on the lists of principals recommended for re-employment at those meetings. Instead, on April 25, 2011, Davis met with Plaintiff to discuss his evaluation. They met a second time on April 29, 2011, for Davis to inform Plaintiff that she had decided not to recommend his continued employment as principal of Willow Brook. Davis' stated reasons were the poor academic performance of Willow Brook during Plaintiff's six-year tenure as shown by student test scores, the poor organizational health of the school according to the District's assessment tool, repeated failures to follow proper procedures regarding approval of contracts, and failure to submit timely reports. At this meeting, Plaintiff asked to be considered for assignment as principal of a smaller school or a position of assistant principal.

Shortly after this meeting, Plaintiff met twice with Mr. Springer to discuss Plaintiff's concerns about a declining number of African-American administrators employed by the District. A meeting on May 2, 2011, was attended by Plaintiff, Mr. Springer, and Linda Toure (African American), who was one of Plaintiff's former supervisors. A meeting on May 3, 2011, was attended by Plaintiff, his pastor (Dr. M.L. Jemison), Mr. Springer, and Mr. Tompkins. In the second meeting, Plaintiff presented a written "Letter of Concerns" that purported to list "several areas of concerns which have adversely impacted school communities . . . in which the majority of African American families reside." *See* Def. District's Mot. Summ. J., Ex. 18 [Doc. No. 50-18]. The letter is described in greater detail, *infra*, in Part D of the Discussion. Davis has testified that Mr. Tompkins informed her about

the second meeting because he attended in her place, and although she denies knowing the contents of the letter, she understood the discussion was "about having too few African-American administrators in the district." *See* Davis Dep. 166:8-167:15. Mr. Springer informed Plaintiff during the first meeting that he would not be recommended for continued employment as principal of Willow Brook. Plaintiff inquired during the second meeting about reassignment as an assistant principal, and Mr. Springer stated it was unlikely.

On May 15, 2011, Davis prepared a memorandum to Plaintiff regarding his employment by the District and his request for reassignment, after consulting Mr. Springer and legal counsel. The memorandum informed Plaintiff that his only option for continued employment would be a teaching position, and he needed to advise her in writing by May 18, 2011, whether he would accept. Otherwise, she planned to recommend his termination. Davis also prepared a written recommendation for termination, but it was never presented. Instead, Plaintiff met with Davis, Mr. Springer, and Ms. Watson-Hunt on May 16, 2011, and received the May 15 memorandum offering a teaching position. On May 18, 2011, Plaintiff notified Davis that he agreed to return to teaching but he would continue looking for an available administrative position within the District. Plaintiff was replaced as principal of Willow Brook by a Caucasian employee who had previously served as a teacher under his supervision.

On June 10, 2011, Davis completed Plaintiff's evaluation for the 2010-11 school year and gave him a "needs improvement" or "unsatisfactory" rating in almost all areas. Plaintiff alleges and presents facts designed to show that Davis treated him differently from similarly

situated Caucasian principals and her performance-based reasons for demoting him to a teaching position were pretextual. These facts are addressed in more detail, *infra*, in Parts B and C of the Discussion. Plaintiff claims Davis was motivated by racial discrimination and retaliation for his May 2011 complaint of racial discrimination.[2] On September 12, 2011, Plaintiff filed an EEOC charge of racial discrimination and retaliation regarding his reassignment.

Plaintiff unsuccessfully applied for numerous positions that became vacant after his demotion to a teaching position, including assistant principal positions at Roosevelt Middle School, Taft Middle School, Chavez Elementary School, and Northeast Highland Elementary School; a principal position at Wheeler Elementary School; and central office positions of Director of Professional Growth and Development, Director of Recruitment, Deployment and Retention, and Human Resources Elementary Team Leader. The District uses an electronic application system and a structured interview process in which all candidates selected for an interview are asked the same questions. The interviews are conducted by a hiring committee. Defendants present evidence that Plaintiff was interviewed for some positions but was not among the top candidates as a result of his interviews. Plaintiff presents evidence that a notation of "Contact HR" appeared by his name in the electronic system at some point, but the significance of this notation is unexplained. The person who testified about this fact,

---

[2] Plaintiff also claims Davis was motivated by retaliation for his wife's federal lawsuit against the District. However, Plaintiff has no evidence that Davis was aware of the lawsuit, as required to establish retaliation (*see Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1267 (10th Cir. 2009)), or that any causal connection exists between a lawsuit that ended in June 2010 and Davis' actions. *See Proctor v. United Parcel Serv.*, 502 F.3d 1208-09 (10th Cir. 2007) (no inference of causation arises from even a four-month gap).

Ms. Watson-Hunt, noticed it when she sat on a hiring committee that interviewed Plaintiff for a position, but she did not contact human resources and did not know whether anyone else on the committee did.

Plaintiff claims that less qualified Caucasian candidates were selected for these positions and the selection decisions were motivated by racial discrimination and retaliation for his discrimination complaints.[3] Plaintiff filed a second EEOC charge in February 2012 after he was not selected for several positions, and amended the charge in August 2012. Plaintiff received notice of his right to sue on September 13, 2012.[4]

## Discussion

### A. The District's Liability Under Sections 1981 and 1983

To prevail on a § 1981 claim against the District for race-based discrimination or retaliation, or a § 1983 claim for retaliation based on protected First Amendment speech, Plaintiff must establish a basis for municipal liability under § 1983, which does not authorize *respondeat superior* liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006) (following *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S.701 (1989), "damages claims against state actors for § 1981 violations must be brought under § 1983"). Under this standard, Plaintiff must establish that the challenged actions of the District were "representative of an official policy or custom of

---

[3] Some positions for which Plaintiff applied were filled by African Americans, and he does not contend these decisions were race-based.

[4] Only promotion decisions that were the subject of an EEOC charge will be considered for purposes of Plaintiff's Title VII claims against the District. *See Shikles v. Sprint/United Management Co*., 426 F.3d 1304, 1317 (10th Cir. 2005) (administrative exhaustion is a jurisdictional requirement). Only decisions in which Davis was involved will be considered for purposes of Plaintiff's § 1981 claims against Davis.

the institution" or were "taken by an official with final policymaking authority." *See Rost*

*ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124-25 (10th Cir. 2008).

The District contends its final policymaking authority is the board of education and Plaintiff

lacks any evidence that the board had an official policy or custom of racial discrimination

or retaliation in personnel matters. Plaintiff does not disagree that Oklahoma law confers

policymaking authority regarding employment matters on the District's board of education.

*See* Okla. Stat. tit. 70, § 5-117(A)(14).

Plaintiff asserts that he has presented sufficient facts to establish a custom of racial

discrimination by the District. Plaintiff does not contend the District had a policy or custom

of retaliation against persons who complained of racial discrimination or who engaged in

protected speech. Thus, Plaintiff effectively concedes that he cannot establish a basis for

liability of the District on his § 1981 retaliation claim or his § 1983 First Amendment claim.

As support for his assertion that the District had a custom of racial discrimination,

Plaintiff first argues that he "has presented evidence of a steady decline in Black leadership

in recent years." Pl.'s Resp. District's Mot. [Doc. No. 67], p.23. Plaintiff cites no facts or

evidence of record to support this argument. The record shows that he complained of a

decline in the number African American administrators but not that there actually had been

a district-wide decline during any particular time period.[5] Plaintiff also contends "[t]he fact

---

[5] Plaintiff has presented the affidavit of an African American colleague, Timothy Young, who resigned from a position of assistant principal in August 2012 after three years of unsuccessfully applying for principal positions and concluding he had received discriminatory treatment. Mr. Young states that he observed a decline in "Black Male administrators" between 2008 and 2012. *See* Young Decl. [Doc. No. 68-22], ¶ 3. This anecdotal evidence does not address all African American administrators or appear to be based on district-wide statistics.

that . . . complaints of race discrimination were neither addressed nor remedied is evidence of the District's widespread custom and practice of discrimination." *Id.* The facts cited to support this argument are ones showing an alleged failure to respond to Plaintiff's complaints. These facts do not suggest a widespread practice or custom of racial discrimination by the District, as argued by Plaintiff.

Plaintiff also argues that the board's approval of adverse actions against him – hiring less qualified Caucasian candidates in positions for which he applied – is discriminatory action by the final policymaker. *Id.* at 24. In making this argument, Plaintiff does not point to any fact showing a race-based decision by the board, only allegedly race-based decisions by Davis. Plaintiff appears to be arguing for "cat's paw" liability in which a subordinate's bias is imputed to the final decisionmaker. *See*, *e.g.*, *Ward v. Jewell*, 772 F.3d 1199, 1205 (10th Cir. 2014). Plaintiff provides no legal authority for imposing municipal liability under this theory.[6] Finally, Plaintiff contends the board delegated final policymaking authority to Davis with regard to his performance evaluations and reviews. Plaintiff cites no fact or evidence to suggest that a delegation of such authority occurred.

Because Plaintiff has failed to demonstrate a genuine dispute of material fact regarding the municipal liability of the District for any racial discrimination, race-based retaliation, or First Amendment retaliation that may have occurred, the District is entitled to summary judgment on Plaintiff's § 1981 and § 1983 claims.

---

[6] The court of appeals has recently stated that a plaintiff asserting a "cat's paw" claim against a school district would have to show that this "theory doesn't run afoul of *Monnell*'s teaching on municipal liability." *See Lawrence v. Sch. Dist. No. 1*, 560 F. App'x 791, 795-96 (10th Cir. 2014).

**B.      Liability for Racial Discrimination Under Title VII or Section 1981**

Plaintiff asserts a claim of racial discrimination against the District under Title VII and against Davis under § 1981.  Both Title VII and § 1981 prohibit adverse employment actions based upon an individual's race, and the elements required to prove a claim under either statute are the same.  *See Crowe v. ADT Sec. Servs., Inc*., 649 F.3d 1189, 1194 (10th Cir. 2011); *Carey v. City of Denver*, 534 F. 3d 1269, 1273 (10th Cir. 2008).  Because Plaintiff relies on circumstantial evidence, his discrimination claims are governed by the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  If Plaintiff establishes a *prima facie* case of discrimination based on race, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id*. at 802-03.  If Defendants povide such a reason, then the burden shifts back to Plaintiff to show that the proffered justification is merely a pretext for unlawful discrimination.  *McDonnell Douglas*, 411 U.S. at 804.

For purposes of summary judgment, Defendants admit that Plaintiff has established a *prima facie* case of racial discrimination in both his demotion from principal to teacher and subsequent failures to promote Plaintiff to another administrative position.  *See* District's Mot. Summ. J. [Doc. No. 50], pp.23-24.  Defendants rely on Davis' performance-based reasons for removing Plaintiff as principal of Willow Brook and the testimony of decision-makers for other positions that Plaintiff lacked the necessary knowledge or skills for higher-level positions.  To avoid summary judgment, Plaintiff must demonstrate that "there is a genuine issue of material fact regarding whether the . . . justification was pretextual."

*Montes v. Vail Clinic, Inc*., 497 F. 3d 1160, 1173 (10th Cir. 2007) (citing *Young v. Dillon Cos*., 468 F.3d 1243, 1249 (10th Cir. 2006)).  To establish that the proffered reason is a pretext for discrimination, a plaintiff can show that the reason is "'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief.'"  *Id*. (quoting *Young*, 468 F. 3d at 1249).  However, "[e]vidence of pretext may take any number of forms, including evidence the plaintiff was treated differently from other similarly-situated employees . . . ."  *Smothers v. Solvay Chems., Inc*., 740 F.3d 530, 539 (10th Cir. 2014) (internal quotation omitted).

### 1. Demotion

Defendants contend the undisputed facts show that Plaintiff was not performing satisfactorily as the principal of Willow Brook – as evidenced by low student test scores and the school's poor organizational health rating – and that other elementary school principals with similar performance issues were also removed.  Defendants rely on facts regarding employment actions taken against five Caucasian principals during the 2010-11 school year, one of whom was allegedly demoted to a teaching position.  Defendants also rely on Davis' involvement in the demotion, termination, resignation, or retirement of fourteen principals other than Plaintiff for unsatisfactory performance during her tenure as Executive Director of Elementary Education or Regional Executive Director (a prior position) – nine Caucasians and five African Americans – and the hiring or promotion of five African-American administrators at her recommendation during this time period.

Plaintiff presents facts to show, however, that Davis supervised only seven of the fourteen elementary school principals who were demoted or separated from employment – five Caucasians and two African Americans – and that the reasons for employment actions regarding these individuals are disputed. Plaintiff points out that a Caucasian principal allegedly demoted to a librarian position and a Caucasian principal allegedly demoted to a teaching position for poor performance were supervised by others. Plaintiff presents facts showing that two Caucasian principals supervised by Davis voluntarily took assistant principal positions while an African American principal supervised by Davis was forcibly demoted to assistant principal, and that the other African American principal supervised by Davis was not recommended for re-employment and elected to retire while a Caucasian principal supervised by Davis was recommended for re-employment but elected to retire. Another Caucasian supervised by Davis was not asked to retire but voluntarily did so. Plaintiff also compares his performance, as shown by Willow Brook's satisfaction of certain performance criteria, with those of other elementary school principals who were recommended for re-employment.

Viewing all of the facts and evidence presented by Plaintiff in the manner most favorable to him, as required by Rule 56, the Court finds that Plaintiff has made a minimally sufficient showing to permit a reasonable finding of disparate treatment based on race in Davis' decision to remove Plaintiff as principal of Willow Brook and not offer him another administrative position. In reaching this conclusion, the Court is constrained by Rule 56 to accept Plaintiff's evidence as true and to draw all reasonable inferences in his favor,

regardless whether the Court would itself draw the same inferences. Thus, with respect to Plaintiff's claim of racial discrimination in his demotion from principal to teacher, the Court finds that a genuine dispute of material facts precludes summary judgment on Plaintiff's racial discrimination claims against Defendants.

### 2. Failure to Promote

Defendants contend the evidence shows the promotion decisions about which Plaintiff complains were based on the interviewers' and decision-maker's assessments of Plaintiff's qualifications for the higher-level positions. Plaintiff contends other facts show the stated reasons for failing to select him are pretextual. He relies on his higher level of education than Caucasians who were selected for some positions and his greater years of experience in education or administration than some successful Caucasian candidates. Plaintiff also points out that Davis was involved in three hiring decisions and was consulted in another, and that other African Americans experienced difficulty in obtaining administrative positions during Davis' tenure.

Upon careful consideration of the summary judgment record, the Court finds that Plaintiff has failed to make a sufficient showing of pretext. As to the relative merits of individual employees for particular positions, the Tenth Circuit has cautioned against relying on differences between qualifications of a plaintiff and a successful applicant to establish pretext. "To show pretext, the disparity in qualifications must be overwhelming." *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005); *accord Santana v. City of Denver*, 488 F.3d 860, 865 (10th Cir. 2007). An inference of pretext is appropriate only

"where 'the facts assure us that the plaintiff is better qualified than the other candidates for the position.'" *Santana*, 488 F.3d at 865 (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003)). Plaintiff cites differences between his credentials and those of successful candidates but makes no effort to demonstrate that he was better qualified for any particular position. In fact, he does not state what qualifications were needed for any of the positions for which he applied. The very limited evidence presented by Plaintiff regarding the challenged promotion decisions is insufficient to show that he was overwhelmingly more qualified for the positions than the individuals who were selected.

Plaintiff also provides an insufficient basis for holding Davis liable for any of the selection decisions about which he complains. The facts do not suggest that Davis was the decision-maker for any challenged decision; they show only that she was a member of the hiring committee for three positions and was consulted in the decision-making process for another. Plaintiff appears to be relying on a "cat's paw" theory "under which an employer may be held liable for the discriminatory animus of an employee who influenced, but did not make, the ultimate adverse employment decision." *See Crowe*, 649 F.3d at 1194.[7] "But the theory does not apply when decision-makers conduct their own investigations without relying on biased subordinates." *See Ward*, 772 F.3d at 1205. Here, Plaintiff fails to show that any influence by Davis in the decision-making process for four positions resulted in the adoption of her allegedly biased opinion, assuming bias is found. The hiring committee for

---

[7] This theory might also allow an individual employee who caused the employer to discriminate to be personally liable under § 1981. *See Smith v. Bray*, 681 F.3d 888, 898-99 (7th Cir. 2012); *Lewis v. Denver Fire Dep't*, 943 F. Supp. 2d 1173, 1190 (D. Colo. 2013).

each position conducted its own interviews of the candidates, and the entire committee was responsible for ranking the candidates' qualifications for the position.

In short, the Court finds that Plaintiff has not demonstrated a genuine dispute of material fact as to whether the District's reasons for not selecting Plaintiff for the challenged positions are pretextual. Therefore, Plaintiff has failed to establish a genuine factual issue regarding his claim that the decisions not to promote him were motivated by racial discrimination, and Defendants are entitled to summary judgment on these claims.

## C. Liability for Retaliation Under Title VII or Section 1981

Plaintiff's claims of unlawful retaliation under Title VII and § 1981 are similarly governed by the *McDonnell Douglas* burden shifting analysis. *See Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008). To satisfy his *prima facie* burden, Plaintiff must show 1) he engaged in protected opposition to discrimination; 2) his employer subsequently took action that a reasonable employee would have found materially adverse; and 3) a causal connection exists between his protected activity and the adverse action. *See Metzler v. Federal Home Loan Bank*, 464 F.3d 1164, 1171 (10th Cir. 2006); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006).

To constitute protected opposition to discrimination, Plaintiff need not have filed a formal charge with the EEOC; protected activity may consist of "complaining informally to supervisors." *Medina v. Income Support Div*., 413 F. 3d 1131, 1135-36 (10th Cir. 2005); *Hertz v. Luzenac Am., Inc*., 370 F.3d 1014, 1015 (10th Cir. 2004). Defendant admits this

element is satisfied, at least as to employment actions taken after Plaintiff complained to Mr. Springer of racial discrimination in May 2011. Davis' admonishments to Plaintiff and any disciplinary action taken before that time cannot form the basis of a retaliation claim.

For purposes of summary judgment, Defendants concede "that Plaintiff's demotion to a teaching position and his allegations regarding the failure to promote constitute materially adverse actions." *See* Def. District's Mot. Summ. J. [Doc. No.50], p.28. Thus, the second element of Plaintiff's *prima facie* showing is satisfied.

Defendants contend, however, that Plaintiff cannot satisfy the third element because he has failed to show a causal connection between protected activity and an adverse action. An inference that the decision not to offer Plaintiff another administrative position was made within days or weeks after he complained to Mr. Springer of racial discrimination is some evidence of a causal connection; close temporal proximity alone has been considered sufficient to establish the causation element of a *prima facie* retaliation case. *See Hennagir v. Utah Dep't of Corr.*, 587 F. 3d 1255, 1266-67 (10th Cir. 2009); *Annett v. Univ. of Kans.*, 371 f3de 1233, 1240 (10th Cir. 2004). As to subsequent decisions not to select Plaintiff for some positions for which he applied, Plaintiff makes no effort to establish a temporal relationship between his complaint to Mr. Springer and those decisions. He instead argues that some decisions were made shortly after his EEOC filings. Because the burden to establish a *prima facie* case is "slight," the Court finds that Plaintiff has sufficiently met that

burden.  *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 n.4 (10th Cir. 2013); *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).[8]

Anticipating that the Court might reach this conclusion, Defendants also contend that legitimate, non-retaliatory reasons for the challenged decisions have been shown and Plaintiff cannot establish pretext.  Tenth Circuit law is clear that close temporal proximity is not sufficient, without more, to show pretext and overcome an employer's justifiable reasons for its adverse actions.  *See Pinkerton v. Colo. Dep't of Transp.*, 563 F. 3d 1052, 1066 (10th Cir. 2009).  In this case, the District's evidence shows the demotion to a teaching position was consistent with Davis' criticisms of Plaintiff's job performance well before he voiced a complaint of racial discrimination, thus presenting a justifiable reason for the demotion decision.  The District's evidence shows that the promotion decisions were the result of a structured interview process conducted by hiring committees, some of which were unaware of Plaintiff's discrimination complaints.  Plaintiff fails to point to any facts from which to infer that the challenged decisions were actually motivated by retaliation.[9]

---

[8] Of course, to establish a causal connection, Plaintiff must show that the person making the adverse decision was aware he had exercised protected rights.  *See Hennagir*, 587 F.3d at 1267; *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007).  Although the District and Davis contend the decision to remove Plaintiff as Willow Brook's principal was made before he first complained of racial discrimination, one could infer from the facts presented by Plaintiff that Davis was aware of his May 2011 complaint to Mr. Springer when the final decision was made to demote him to a teaching position.  One could also infer that the District was aware of Plaintiff's EEOC filing when subsequent selection decisions were made.  Although Plaintiff has not shown that all of the hiring committees were aware of his EEOC charges, the Court will assume for purposes of a *prima facie* case that the District's knowledge was sufficient.

[9] One circumstance that might arguably bear on causation is the sheer number of Plaintiff's unsuccessful promotion attempts during a one-year period.  *See Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1172-73 (10th Cir. 2014).  Because Plaintiff does not make this argument, however, the Court declines to address it.

Upon careful consideration of Plaintiff's arguments and the summary judgment record, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact regarding his race-based retaliation claim. Therefore, Defendants are entitled to summary judgment on this claim.

## D. Liability for a First Amendment Violation

Because Plaintiff has failed to establish a basis for municipal liability of the District under § 1983 for any First Amendment violation that occurred, the issue presented for decision with respect to this claim is whether Plaintiff can establish a basis for individual liability of Davis on his First Amendment claim. In defense of this claim, Davis asserts qualified immunity.

To establish a § 1983 claim against an individual defendant asserting the defense of qualified immunity, Plaintiff must show facts that "make out a violation of a constitutional right" and demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). To establish a First Amendment violation by Davis, who was not Plaintiff's employer, he "must satisfy three elements: '(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected

conduct.'" *Trant v. Oklahoma*, 754 F.3d 1158, 1169-70 (10th Cir. 2014) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

It is well established that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *see also Connick v. Myers*, 461 U.S. 138, 147 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968). To establish First Amendment protection, a public employee must satisfy the pertinent elements of the *Garcetti/Pickering* test. *See Trant*, 764 F.3d at 1170. Here, the pertinent elements are: "'(1) whether the speech was made pursuant to an employee's official duties; [and] (2) whether the speech was on a matter of public concern.'" *See Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009) (quoting *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202 (10th Cir.2007)).[10] These elements present "issues of law to be decided by the court." *Id.*; *see also Trant*, 754 F.3d at 1165.

"The Tenth Circuit's decisions addressing the first step of the *Garcetti/Pickering* analysis 'have taken a broad view of the meaning of speech that is pursuant to an employee's official duties.'" *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (quoting *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008)); *see also Casey v. West Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1331 (10th Cir. 2007) (describing the first prong of the analysis as a "heavy barrier"). However, the court of appeals has not announced bright line rules, but "has taken a case-by-case approach, looking both to the

---

[10] Defendants do not challenge the third element of the *Garcetti/Pickering* test.

content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Rohrbough*, 596 F.3d at 746. While "speech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties," this factor is not dispositive. *See id.* at 747. "[T]he proper focus is ultimately still whether the speech 'stemmed from and [was of] the type . . . that [the employee] was paid to do,' regardless of the exact role of the individual or entity to which the employee has chosen to speak." *Id.* (quoting *Green v. Bd. of County Comm'rs*, 472 F.3d 794, 798 (10th Cir. 2007); alterations in *Rohrbough*).

In this case, Plaintiff spoke directly to the District's superintendent and others who attended two meetings between them. The parties disagree whether the attendees at these meetings were within Plaintiff's chain of command as an elementary school principal, but as stated above, this factor is not dispositive. The content of Plaintiff's speech is reflected in a written "Letter of Concerns" presented to Mr. Springer during the second meeting. *See* Def. District's Mot. Summ. J., Ex. 18 [Doc. No. 50-18].[11] The stated purpose of the Letter was to provide notice of "several areas of concerns which have adversely impacted school communities on the northeast/central Oklahoma sides of town, in which the majority of African American families reside." *See id.* Although a number of the enumerated concerns appear to relate to Plaintiff's personal circumstances, the Letter speaks to broader issues about how the District was addressing a lack of racial diversity among administrators and the

---

[11] A copy of this Letter appears at various places in the case record, but the Court cites only one.

unique challenges faced by administrators at low performing schools.[12]  The Letter reflects that copies would be sent to the board of education, the Oklahoma City Chapter of the National Alliance of Black School Educators, and the NAACP.  Although Plaintiff admits he never actually mailed copies of the Letter to these organizations, the Court finds under the circumstances presented that Plaintiff's speech did not fall within his official duties as a school principal.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *See Connick*, 461 U.S. at 147-148.  "Speech is a matter of public concern if it is of interest to the community, and we focus on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest."  *Trant*, 754 F.3d at 1165 (internal quotations and citations omitted); *see Brammer-Hoelter*, 492 F.3d at 1205.  "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication."  *See City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004).

Viewing the facts and evidence in the light most favorable to Plaintiff, as required by Rule 56, the Court finds that Plaintiff has sufficiently shown he was speaking to Mr. Springer regarding a matter of public concern.  Although it presents a close question, the Court finds

---

[12] As stated by Defendants, "[t]he purpose of Plaintiff's letter appears to be to advocate for additional resources for students and administrators at low performing schools."  *See* Def. Davis' Mot. Summ. J. [Doc. No. 51], p.5.

that Plaintiff's speech was not merely dealing with a personal grievance unrelated to the public interest but spoke to broader issues within the District of racial diversity, sound educational strategies, and their impact on African American families and students. Accordingly, Plaintiff has demonstrated that he was engaged in speech protected by the First Amendment.

Regarding the second element of Plaintiff's § 1983 claim against Davis, the Court finds that Davis' action after Plaintiff's speech of requiring him to accept a demotion in order to remain employed by the District, could be found to cause an injury that would chill a reasonable person from continuing to engage in further protected activity.

Turning to the third element, the court of appeals has explained the proper analysis as follows:

> At the summary judgment stage, some facts must demonstrate the defendants acted on the basis of a culpable subjective state of mind to satisfy the third step. If the defendant's intent in urging adverse action against the employee is not retaliatory (e.g., if the defendant identifies legitimate problems with employee's qualifications or performance) or if the defendant's conduct did not cause the adverse action, then the defendant may successfully defend the retaliation claim. And temporal proximity between the protected speech and the alleged retaliatory conduct, without more, does not allow for an inference of a retaliatory motive.

*Trant*, 754 F.3d at 1170 (internal quotations and citations omitted).

Plaintiff has presented no facts or evidence, besides temporal proximity, that might establish Davis' action of forcing him to accept a demotion to a teaching position was substantially motivated by his constitutionally protected speech. Although Plaintiff challenges whether Davis' stated reasons for her action were legitimate or pretextual, it is

undisputed that her criticisms of Plaintiff's performance as a principal predated his speech and formed the basis of her decision not to recommend his re-employment in that position. Plaintiff points to no fact from which to reasonably infer that his meetings with Mr. Springer played any part in Davis' action against him.

Therefore, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact regarding his claim that a First Amendment violation occurred, and that Davis is entitled to summary judgment on this claim.

## E.    Tort Liability for Interference with Contract

Davis contends that all of her actions with regard to Plaintiff's employment were done as part of her job duties as Executive Director of Elementary Schools and that Plaintiff lacks any facts to show she was acting outside of the scope of her employment, thus precluding a tortious interference claim against her under Oklahoma law and the Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151-72. In response to these arguments, Plaintiff states he "concedes this issue." *See* Pl.'s Resp. Def. Davis' Mot. Summ. J. [Doc. No. 69], p.11. Therefore, Davis is entitled to summary judgment on Plaintiff's tort claim.

## Conclusion

For these reasons, the District is entitled to summary judgment on Plaintiff's § 1981 claims of racial discrimination and retaliation asserted in Count I of the Corrected Second Amended Complaint, the § 1983 First Amendment claim asserted in Count V, and the Title VII claim of retaliation asserted in Count III. Davis is entitled to summary judgment on Plaintiff's of § 1981 claim of retaliation asserted in Count I, the claim of tortious

interference with contract asserted in Count IV, and the § 1983 First Amendment claim asserted in Count V. Genuine disputes of material facts exist as to Plaintiff's Title VII claim against the District for racial discrimination in Count II and Plaintiff's § 1981 claim against Davis for racial discrimination asserted in Count I.

IT IS THEREFORE ORDERED that Defendant District's Motion for Summary Judgment [Doc. No. 50] and Defendant Davis' Motion for Summary Judgment [Doc. No. 51] are GRANTED in part and DENIED in part, as set forth herein.

IT SO ORDERED this 7th day of August, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE